UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CRISTAL VAZQUEZ, individually and as
Assignee of the Rights of David Sidor,

               Plaintiff
        -v-                                 1:19-CV-71

MARKEL INSURANCE COMPANY,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                          OF COUNSEL:

COUTU LANE PLLC                          KEVIN A. LANE, ESQ.
Attorneys for Plaintiff
237 Main Street Suite 840
Buffalo, New York 14203

KENNEDYS CMK LLP-NEW JERSEY     APRIL THERESA VILLAVERDE, ESQ.
Attorneys for Defendant
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920

KENNEDYS CMK LLP-NEW YORK        JOANNA L. YOUNG, ESQ.
Attorneys for Defendant                       JACOB J. PALEFSKI, ESQ.
570 Lexington Avenue-8th Floor
New York, New York 10022

DAVID N. HURD
United States District Judge

# MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

This action was first set in motion on October 14, 2010, when plaintiff Cristal Vazquez ("Vazquez" or "plaintiff") suffered an injury during her time working for Mother Nurture Daycare, LLC ("Mother Nurture" or "the daycare"). Mother Nurture operated out of the marital

home of its owner, Mercedes Sidor, and her husband, David Sidor ("David") (together, "the Sidors"). Although plaintiff sued both Sidors for her injury, her claims against Mercedes were dismissed as foreclosed by New York's Workers' Compensation Law, § 29(6) ("§ 29(6)").

Eventually, Vazquez attained a settlement with David: he would not contest liability, but she could only recover against his insurer, defendant Markel Insurance Company ("Markel" or "defendant"). However, defendant had already notified David and Mercedes—but not plaintiff—that it would not provide coverage. Plaintiff alleges that this violates New York Insurance Law § 3420(d)(2) ("§ 3420(d)(2)"), which requires an insurer to notify both the insured and the injured party if an exclusion prohibits recovery. As a result, plaintiff argues that defendant is now estopped from arguing that David was not an insured.

On October 22, 2018, Vazquez filed a complaint in New York State's Supreme Court, Ulster County, as an Assignee of David's rights to insurance coverage. Plaintiff alleged four defects in Markel's refusal to provide coverage: (1) David is not subject to the insurance policy's Employer Liability exclusion; (2) defendant failed to notify plaintiff, the injured party, that she would not be covered under the policy; (3) defendant's denial of coverage was not timely submitted; and (4) defendant cannot subsequently disclaim coverage to cure its initial, invalid waiver. On December 4, 2019, defendant moved for summary judgment arguing that each of those positions lacked merit, and on January 8, 2020, plaintiff moved for summary judgment as well.

## II.  **BACKGROUND**

On December 10, 2008, Mercedes formed Mother Nurture as a limited liability company ("LLC"). Dkt. 20-4, p. 4.[1] Mercedes appears to have been the daycare's only member. *See id.* (providing only Mercedes' signature to account for the "written consent of a

---
[1] Pagination corresponds with CM/ECF.

2

majority in interest of the members" of the limited liability company).[2] Mercedes operated the daycare out of her and David's home. Dkt. 20-7, p. 3. The Sidors had homeowners' insurance through Allstate Insurance Company ("Allstate")—who is not a party to this action—and commercial insurance through Markel ("the policy"). Dkt. 20-8, p. 3.

David helped Mother Nurture in sundry ways: he handled the finances for the daycare; he collected payments; and he conducted maintenance and repairs where necessary. Dkt. 20-7, p. 3. If the daycare had excess funds, he would draw from its coffers. *Id.* One day, upon Mercedes' request, he installed a rack to store the cots on which the children of the daycare would sleep. *Id.*

Vazquez was an employee of Mother Nurture in October of 2010. Dkt. 20-7, p. 3. On October 14, 2010, plaintiff was taking cots down from the rack that David had installed, when two or three cots, each weighing three pounds, fell off the rack and onto her, knocking her backwards into a water heater. *Id.*; Dkt. 30-2, p. 25. Plaintiff suffered a cervical disc herniation, which required physical therapy, a steroid injection, and ultimately surgery. Dkt. 1-4, ¶¶ 4-8. Plaintiff retains scars in her hip and neck from the surgery, and still suffers from pain and reduced mobility in her neck. *Id.* ¶¶ 9-13. Plaintiff received workers' compensation benefits for her injuries. Dkt. 20-7, p. 3.

Despite recovering under worker's compensation, Vazquez nevertheless sued both David and Mercedes in New York State Supreme Court, Ulster County ("the state court"), on September 6, 2013, to further recover for her ongoing pain and limitations ("the prior action"). Dkt. 20-4, p. 7.

On September 25, 2013, Markel first received notice of plaintiff's claim against the Sidors from David. Dkt. 20-12, p. 3. David held both himself and Mercedes out to defendant

---

[2] In any event, because plaintiff alleges in her complaint that Mercedes is the sole member of Mother Nurture, she cannot dispute that point. Dkt. 1-1 ("Comp."), ¶ 5.

as the owners of Mother Nurture. Dkt. 20-11, ¶ 8. On October 9, 2013, defendant determined that there was no coverage for plaintiff's complaint because plaintiff was an employee at the time of the accident, and thus she could only recover under workers' compensation. Dkt. 20-12, p. 8. On November 6, 2013, defendant sent David, but not plaintiff, a letter disclaiming coverage of plaintiff's claim. *Id.* at 10-12.

On December 11, 2015, the state court dismissed plaintiff's claim against Mercedes, because she employed plaintiff, and thus recovery was limited only to the workers' compensation benefits plaintiff had already attained. Dkt. 20-7, p. 5 (citing N.Y. WORKERS COMP. LAW §§ 11, 29(6)).

However, the state court declined to hold that David was an employee of Mother Nurture. Dkt. 20-7, pp. 5-6. Instead, it held that there was a question of fact as to whether his relationship to Mother Nurture was that of an employee, that of a landlord, or that of an independent contractor. *Id.* On September 26, 2017, following that holding, David did not want to continue to incur expenditures defending himself against Vazquez's claims. Dkt. 20-8, pp. 2, 6. As a result, plaintiff and David agreed to a settlement, whereby plaintiff could only pursue relief against Allstate and Markel, but David would no longer contest the issue of liability. *Id.* at 1-6. The state court later conducted an inquest of damages and found that plaintiff's injuries merited $1,173,071.47.[3] Dkt. 1-4, p. 7.

The problem, of course, was that Markel had already denied coverage for Vazquez's injury. Dkt. 20-12, pp. 10-12. Plaintiff disagreed with that denial however, because the policy covered bodily injury and property damage suits against Mother Nurture. Dkt. 20-15, p. 5.

---

[3] The state court's damages assessment included $32,774.64 in medical payments and $40,296.83 for lost wages, despite plaintiff's workers' compensation lien for those same injuries in the same amounts, as well as $700,000.00 for past pain and suffering and $400,000.00 for future pain and suffering. Dkt. 1-4, p. 7.

4

The entities insured by the policy are the daycare itself, its members, and its managers, but only if the injury arose with respect to their duties as managers. *Id.* at 11.

In addition, the policy covers "[a]ny person (other than [Mother Nurture's] 'employee'), or any organization while acting as [the daycare's] real estate manager." Dkt. 20-15, p. 11. The policy also insures "volunteer workers," but only if the volunteer worker was acting at the direction of, and within the scope of their duties for, the daycare. *Id.* at 18. Moreover, the policy does not consider volunteer workers to be insureds for bodily injuries to the daycare, its other volunteer workers, or its employees. *Id.*

Nevertheless, Vazquez initiated this action in state court on October 22, 2018. Comp. p. 2. Plaintiff relied on New York Insurance Law § 1212 to claim that Markel improperly refused to insure David against her claim. Dkt. 1, ¶ 2. On January 18, 2019, defendant removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, because plaintiff is a citizen of New York, and defendant is an Illinois corporation with a principal place of business in Virginia. Dkt. 1, ¶¶ 8-9.

On December 4, 2019, Markel moved for summary judgment. Dkt. 20. On January 8, 2020, Vazquez filed a cross-motion for summary judgment in her favor. Dkt. 27, 28, 30. The motions having been fully briefed, they will now be considered on the parties' submissions without oral argument.

## III. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A fact is material if it

"might affect the outcome of the suit under the governing law." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273.

The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Instead, a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## IV. **DISCUSSION**

New York's Insurance Law § 3420(a)(2) allows an injured party with an unsatisfied judgment against an insured party to sue the insurer for satisfaction of the judgment in certain circumstances. *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 174 (2d Cir. 2010). Similarly, § 3420(a)(3) allows the injured party to give notice to the insurer to protect the injured's right to that direct action. *Id.*

Under § 3420(d)(2), an insurer denying coverage must affirmatively "disclaim liability or deny coverage for death or bodily injury arising out of . . . any . . . accident occurring within [New York.]" N.Y. INS. LAW § 3420(d)(2). In so doing, an insurer must "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured *and the injured person* . . . ." *Id.* (emphasis added). If the insurance carrier fails to

6

timely disclaim coverage, it is precluded from arguing in court that a type of claim is excluded from coverage. *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010). "The timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage . . . ." *In re Allcity Ins. Co. (Jimenez)*, 581 N.E.2d 1342, 1343 (N.Y. 1991).

However, "[a] disclaimer is unnecessary when a claim does not fall within the coverage terms of an insurance policy . . . ." *Markevics v. Liberty Mut. Ins. Co.*, 761 N.E.2d 557, 559 (N.Y. 2001). That is to say, "estoppel [for failure to disclaim coverage] may not be used to create coverage regardless of whether . . . the insurance company was timely i[n] issuing its disclaimer." *In re U.S. Specialty Ins. Co. (Denardo)*, 57 N.Y.S.3d 743, 747 (App. Div. 3d Dep't 2017). That said, a timely disclaimer is still required when a claim falls within the coverage terms of a policy and is only denied because of an exclusion within the coverage provision. *Markevics*, 761 N.E.2d at 559-60.

In interpreting an insurance policy, courts rely on the plain meaning of the relevant terms. *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013). Moreover, "the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies." *State of New York v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985).

However, insurance agreements are limited such that workers' compensation payments are "the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ[.]" N.Y. WORKERS' COMP. LAW § 29(6). An act is done "in the same employ" if the injuring coworker was "acting within the scope of his employment" at the time the injury occurred. *Hanford v. Plaza Packaging Corp.*, 811 N.E.2d 30, 31 (N.Y. 2004).

7

Vazquez's argument is that Markel cannot escape from covering David's portion of the judgment due to several defects in the mechanism through which it disclaimed coverage under § 3420(d)(2). Defendant counters by arguing that disclaiming coverage was unnecessary because David was not an insured within the meaning of the policy, and it therefore cannot be compelled to create coverage for him. In arguing that point, defendant relies on the terms of the policy, which only covers Mother Nurture, its members, its real estate manager, and its volunteer workers. It is defendant's position that because none of these labels apply to David, he is not covered by the policy and there was no need for defendant to disclaim.

Vazquez counters Markel's arguments on two grounds. The first is that David installed the cot rack that fell on plaintiff while acting as Mother Nurture's landlord, or "real estate manager," and thus is an insured under the policy. Dkt. 20-15, p. 11; *see ABM Mgmt. Corp. v. Harleysville Worcester Ins. Co.*, 977 N.Y.S.2d 330, 333 (App. Div. 2d Dep't 2013) (noting that a real estate manager is "the person or entity acting as the owner's real estate manager during the policy's effective dates and for 'occurrences' . . . within those dates"). In the alternative, plaintiff argues that David was a volunteer worker, but that defendant is prohibited from disclaiming coverage under § 3420(d)(2) because the clause in the policy excluding liability for injuries to co-workers by volunteer workers is an exclusion, not an absence of coverage.

In response, Markel argues that a real estate manager must manage the real estate of another, and that David's self-interest as the owner of the house precludes him from qualifying under that provision. *See Ins. Co. of N. Am. v. Hilton Hotels U.S.A., Inc.*, 908 F. Supp. 809, 815-16 (D. Nev. 1995), *aff'd sub nom. Ins. Co. of N. Am. v. Hilton Hotels U.S.A.*, 110 F.3d 715 (9th Cir. 1997). In the alternative, defendant argues that: (1) David

8

was not a volunteer worker; (2) the portion of the policy that denies coverage for volunteer workers who cause personal injury to the insured's employees is not an exclusion but an absence of coverage, and therefore § 3420(d)(2) does not apply; and (3) defendant timely notified Vazquez that David was not an insured.

There is one question of fact in this case. It is the same question that vexed the state court in the prior action, and it is the same question that demands the denial of both parties' motions now. Namely: what precisely was David's role when he installed the cots in the basement? If David installed the cot rack as a landlord, which the state court identified as a possibility, he would qualify as a real estate manager. Dkt. 20-7, pp. 5-6. In that case, he would be an insured under the policy, and Markel would be estopped under § 3420(d)(2) from denying coverage. Thus, defendant would be required to pay the full $1,173,071.47 in damages assessed against David in the prior action.

Moreover, Markel's arguments that David cannot qualify as a real estate manager because he owns the house himself and is thus self-interested are inapposite. First, the authority that defendant relies on is from the District of Nevada, and thus it is not binding. *Hilton Hotels U.S.A.*, 908 F. Supp. at 815-16. Second, the question is not whether he acted as a real estate manager for Mother Nurture in some general sense. Rather, the question is whether, at the moment he installed the cots in the basement of his house, he did so for his own sake or the daycare's. Given the lack of utility for a cot rack in the average household, a reasonable factfinder could conclude that he installed the rack solely for the daycare.

However, if a factfinder were to find that David acted in virtually any capacity other than as a real estate manager for Mother Nurture, Markel would not be obligated to pay. The state court in the prior action identified two other roles that David might have been playing: (1) an independent contractor; or (2) an employee. Dkt. 20-7, pp. 5-6. If David was acting as

9

an independent contractor, then he is outside the scope of the policy. *See generally* Dkt. 20-15, pp. 11-12 (listing the categories of people who may qualify as an insured). Similarly, if he is related to the daycare as an employee or a volunteer worker, it would render workers' compensation Vazquez's only available remedy.[4] N.Y. WORKERS' COMP. LAW § 29(6) ("The right to compensation or benefits under [workers' compensation] shall be the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ[.]").

After all, the policy's definition of a volunteer worker is only triggered by the same "within the scope" of employment standard as that which triggers the exclusive remedy provision of New York's workers' compensation law. *Compare* Dkt. 20-15, p. 18 (providing that a volunteer worker is only an insured if the injury occurred while the volunteer was "within the scope" of the volunteer work), *with Hanford*, 811 N.E.2d at 31 (holding that two people are within the same employ if the accident occurred "within the scope" of their employment). Thus, David is only an ensured as a volunteer worker if Vazquez's injury occurred within the scope of an employment relationship to Mother Nurture, in which case plaintiff's "exclusive remedy" would be the workers' compensation lien to which she is already entitled and which she has already received. N.Y. WORKERS' COMP. LAW § 29(6).

Indeed, the prior action's determination that allowed Vazquez to proceed against David despite the availability of workers' compensation necessarily hinged on the question of fact as to whether David's relationship to Mother Nurture was that of a "landlord" or "independent

---

[4] Theoretically, David's concession of liability would require him to concede that he was not an employee, because otherwise he could not have been found liable. Dkt. 20-8, pp. 1-6. However, because that issue was not actually litigated to the point of a final judgment in the prior action, nor was Markel a party to it, that concession cannot have preclusive effect, and the parties are free to continue to litigate on the issue. *Gall v. S. Branch Nat'l Bank*, 783 F.2d 125, 127-28 (8th Cir. 1986) (noting that the principles of res judicata "do not apply where . . . the issues or causes of action sought to be precluded in a subsequent proceeding were allegedly determined in a . . . judgment by consent"); *see also In re Barton*, 272 B.R. 61, 64-65 (N.D.N.Y. 2002) (finding that prior confession of judgment does not preclude subsequent litigation).

10

contractor" rather than an employee. Dkt. 20-7, pp. 5-6. If David installed the cots for any purpose rooted in an employment relationship to the daycare, then plaintiff's claims against him would have been dismissed much as her claims against Mercedes were, because New York's workers' compensation statute demands it. *See Id.* at 5 (dismissing claims against Mercedes because she was plaintiff's employer).

Although New York courts appear to have left unanswered the question of whether the exclusive remedy provision of § 29(6) overpowers any entitlement Vazquez may have to estoppel for Markel's failure to disclaim, this Court is nevertheless satisfied that it does. New York courts have interpreted § 3420(d)(2) such that the remedy for its violation is estoppel from disclaiming coverage, but this judicial remedy should not overcome a statutory mandate as clear and absolute as that the "exclusive remedy" for workplace injuries caused by people of the same employ "*shall be*" workers' compensation. N.Y. WORKERS' COMP. LAW § 29(6); *NGM Ins. Co.*, 593 F.3d at 153.

Indeed, to this Court's knowledge the only exception that New York courts have permitted for the "exclusive remedy" provision of § 29(6) is that if an employer contractually agrees to cover a particular type of insurance and fails to do so, the employee can bring a breach of contract claim against the employer. *See Elrac, Inc. v. Exum*, 961 N.E.2d 643, 644-45 (N.Y. 2011). Plaintiff has submitted no evidence of any contract between herself and David that would entitle her to bring a claim, and therefore this exception does not apply.

Moreover, enforcing estoppel would allow Vazquez to profit off of inconsistent argument. The only reason the state court was willing to entertain the question as to whether David could stand liable for her claim was precisely because plaintiff had successfully argued that a reasonable factfinder could conclude that he was not an employee of Mother Nurture and was thus not subject to § 29(6)'s mandate. Dkt. 20-7, pp. 5-6.

11

This Court "cannot sanction the circumvention of [§ 29(6)'s] clear legislative plan by approving a theory which would permit [a co-employee] to be sued in his capacity as property owner" for the purposes of establishing liability, but arguing that he is a co-employee for the purposes of establishing insurance coverage. *Cf. Billy v. Consol. Mach. Tool Corp.*, 412 N.E.2d 934, 939 (N.Y. 1980). After all, "an employ[ee] remains an employ[ee] in his relations with his [co-]employees as to all matters arising from and connected with their employment. He may not be treated as a dual legal personality, 'a sort of Dr. Jekyl and Mr. Hyde . . . .'" *Id.* (citing *Williams v. Hartshorn*, 69 N.E.2d 557, 558 (N.Y. 1946)). It simply cannot be that David is liable because he *is not* an employee of Mother Nurture, yet Markel must cover that liability because he *is* a daycare worker.[5] To the extent that this holding would render the state court's damages assessment of $1,173,071.47 moot, that is simply the price Vazquez paid by agreeing to only pursue a judgment against Markel. Dkt. 1-4, p. 7.

Thus, it is irrelevant whether the policy's language that volunteer workers are not insured if they cause bodily injury to Mother Nurture's employees is a policy exclusion or an absence of coverage. Dkt. 20-15, p. 18. Similarly, it is irrelevant whether Markel was timely in informing Vazquez that her accident would not be covered. In either case, defendant did not need to disavow coverage because plaintiff's remedy was limited to workers' compensation. *NGM Ins. Co.*, 593 F.3d at 153. Moreover, because defendant has no viable policy exclusion if David is considered a real estate manager, the issue of estoppel is

---

[5] To clarify, this is not to say that non-mutual defensive collateral estoppel applies to bar plaintiff, but not defendant, from relitigating the issue of David's role when he installed the cot rack. *Griffin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 251-52 (E.D.N.Y. 2018) (collaterally estopping a plaintiff from reasserting a prior, unsuccessful claim against a separate defendant because the same claim was "raised, litigated, and actually decided by a judgment in a prior proceeding") (citing *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003)). David's status has never been litigated to completion and collateral estoppel is therefore not appropriate for this issue. Instead, this Court is only noting the consequences of a determination that David acted in any kind of employment role given the context in which the question arises.

irrelevant should this Court find that to have been his role. Therefore, under no circumstance is the issue of estoppel under § 3420(d) relevant to this case.

Instead, the sole question is what role David played when he installed the cot rack. It is a question with many entangled facts that would be difficult indeed to ask a court to sort out.[6] David's marriage to Mercedes, Mercedes' absolute control over Mother Nurture, and David's sharing ownership of the daycare's premises with his wife, create together something of a conundrum. In the ordinary case, David's ownership of the house the daycare was operated out of would cut in favor of him being a real estate manager. But the fact that it is also the marital home that he shares with his wife conversely serves to strengthen the proximity of that relationship and the likelihood that David was acting as a husband, a volunteer, or some informal semblance of a contractor. That said, certain other facts, including whether the cot rack would have had any further use to the home rather than just to the daycare, the extent and nature of any renovations David may have made specifically for the daycare, and any interactions David would have had with contractors or home repairmen on the daycare's behalf may help elucidate the matter.

Nevertheless, despite the difficulties the degree of factual overlap will create at trial, it cannot be said that David's role at the time that he installed the cot rack can be decided at this stage such that no reasonable factfinder could dispute what, precisely, his role was on October 14, 2010. Instead, it must be left up to this Court to decide by a preponderance of the evidence the nature of David's role. In particular, it must decide whether David installed the cot rack because of his relationship with his house, or with his wife, as the owner of Mother Nurture.

---

[6] Neither party made a demand for a jury trial.

13

If this Court concludes at the end of trial that David acted as a real estate manager, then David was covered under the insurance policy, and Markel must pay the $1,173,071.47 for which the state court found David liable. If this Court concludes that David's role was anything other than a real estate manager, then either David was not covered by the policy, or else recovery under the policy would be preempted by § 29(6). In either case, Vazquez would recover nothing. There is thus a clear question of material fact, and summary judgment is inappropriate as to both parties' motions. Both motions must therefore be denied.

## V. CONCLUSION

This case presents a classic dispute of material fact, attached to truly high stakes. Each party has presented a theory under which it can prevail, and each party has facts at its disposal that could support the theory that it argues. Under these circumstances, summary judgment is inappropriate for either party at this time. The fundamental dispute amounts to what David's role was when he installed the cot rack that injured Vazquez, and barring the introduction of later revelatory evidence, that question is one of fact that can only be assessed through the crucible of trial. The parties must therefore complete whatever discovery remains to them, and proceed to a bench trial.

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment is DENIED;

2. Plaintiff's motion for summary judgment is DENIED;

3. Defendant's request for oral argument is DENIED AS MOOT; and

4. The parties are to proceed to a bench trial on the issue of David's relationship to Mother Nurture in installing the cot rack.[7]

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: February 14, 2020
Utica, New York.

---

[7] On April 1, 2020, a firm trial date will be set for May of 2020.